1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL CONDE-RODRIGUEZ, ) | 1: 09-cv—02241-LJO-SMS-HC |
| ) | |
| Petitioner, ) | ORDER DEEMING RESPONDENT'S MOTION |
| ) | TO DISMISS TO BE AN ANSWER TO THE |
| ) | PETITION |
| v. ) | (DOC. 10) |
| ) | |
| NEIL H. ADLER, ) | FINDINGS AND RECOMMENDATION TO |
| ) | DENY THE PETITION FOR WRIT OF |
| Respondent. ) | HABEAS CORPUS |
| ) | (DOCS. 1, 10) |

        Plaintiff is a federal prisoner proceeding with a petition
for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  The
matter has been referred to the Magistrate Judge pursuant to 28
U.S.C. § 636(b)(1) and Local Rules 302 and 304.  Pending before
the Court is Respondent's motion to dismiss the petition filed on
March 18, 2010.  On April 19, 2010, Petitioner filed documents
deemed by a previous order to have been an opposition to the
motion.  No reply was filed.

/////

//////////

1

1    I. <u>Jurisdiction</u>

2         A. <u>Subject Matter Jurisdiction</u>

3    Relief by way of a writ of habeas corpus extends to a
4    prisoner in custody under the authority of the United States who
5    shows that the custody violates the Constitution, laws, or
6    treaties of the United States.  28 U.S.C. § 2241(c)(3).  Although
7    a federal prisoner who challenges the validity or
8    constitutionality of his conviction must file a petition for writ
9    of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner
10   challenging the manner, location, or conditions of the execution
11   of a sentence must bring a petition for writ of habeas corpus
12   under 28 U.S.C. § 2241.  <u>Hernandez v. Campbell</u>, 204 F.3d 861,
13   864-65 (9th Cir. 2000).

14   Here, Petitioner alleges that he was denied due process of
15   law in connection with a prison disciplinary hearing and the
16   resulting loss of good-time credits.  A due process claim
17   concerning parole, good time, or other rules administered by a
18   prison or penal administrator that challenges the duration of a
19   sentence is a cognizable claim of being in custody in violation
20   of the Constitution pursuant to 28 U.S.C. § 2241(c)(3).  <u>See</u>,
21   <u>e.g.</u>, <u>Superintendent v. Hill</u>, 472 U.S. 445, 454 (1985)
22   (determining procedural due process claim concerning disciplinary
23   procedures and findings); <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 88
24   (2005) (Kennedy, J., dissenting).  If a constitutional violation
25   has resulted in the loss of time credits, it affects the duration
26   of a sentence, and the violation may be remedied by way of a
27   petition for writ of habeas corpus.  <u>Young v. Kenny</u>, 907 F.2d
28   874, 876-78 (9th Cir. 1990).

2

1    Accordingly, the Court concludes that it has subject matter
2  jurisdiction over the petition.

3           B. <u>Jurisdiction over the Person</u>

4    Title 28 U.S.C. § 2241(a) provides that writs of habeas
5  corpus may be granted by the district courts "within their
6  respective jurisdictions." A writ of habeas corpus operates not
7  upon the prisoner, but upon the prisoner's custodian. <u>Braden v.
8  30th Judicial Circuit Court of Kentucky</u>, 410 U.S. 484, 494-495
9  (1973). A petitioner filing a petition for writ of habeas corpus
10 under § 2241 must file the petition in the judicial district of
11 the petitioner's custodian. <u>Brown v. United States</u>, 610 F.2d
12 672, 677 (9th Cir. 1990). The warden of the penitentiary where a
13 prisoner is confined constitutes the custodian who must be named
14 in the petition, and the petition must be filed in the district
15 of confinement. <u>Id.</u>; <u>Rumsfeld v. Padilla</u>, 542 U.S. 426, 446-47
16 (2004). It is sufficient if the custodian is in the territorial
17 jurisdiction of the court at the time the petition is filed;
18 transfer of the petitioner thereafter does not defeat personal
19 jurisdiction that has once been properly established. <u>Ahrens v.
20 Clark</u>, 335 U.S. 188, 193 (1948), overruled on other grounds in
21 <u>Braden v. 30th Judicial Circuit Court of Kentucky</u>, 410 U.S. at
22 193, citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944); <u>Francis v.
23 Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990). A failure to name and
24 serve the custodian deprives the Court of personal jurisdiction.
25 <u>Johnson v. Reilly</u>, 349 F.3d 1149, 1153 (9th Cir. 2003).

26   Here, at all pertinent times, Petitioner was incarcerated at
27 the Taft Correctional Institution (TCI), which is located within
28 the Eastern District of California. Petitioner named Neil H.

3

1  Adler, the Warden of TCI, as Respondent.

2      Accordingly, the Court concludes that it has personal

3  jurisdiction over the custodian.

4      II. <u>Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)</u>

5      In the motion before the Court, Respondent purports to

6  proceed pursuant to Fed. R. Civ. P. 12(b)(6), which provides for

7  the making of a motion to dismiss for failure to state a claim

8  upon which relief can be granted.  Such a motion tests the legal

9  sufficiency of the claim or claims stated in the complaint.  In

10  considering a motion under Fed. R. Civ. P. 12(b)(6), a court must

11  construe the complaint in the light most favorable to the

12  plaintiff; accept all well-pleaded factual allegations as true;

13  and determine whether the plaintiff can prove any set of facts to

14  support a claim that would merit relief.  <u>Cahill v. Liberty Mut.</u>

15  <u>Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir. 1996).

16      The Federal Rules of Civil Procedure are not necessarily

17  fully applicable to the present proceeding. The rules governing

18  civil procedure may be applied to a proceeding governed by the

19  Rules Governing Section 2254 Cases in the United States District

20  Courts (Habeas Rules) to the extent that they are not

21  inconsistent with any statutory provisions or the rules governing

22  cases brought pursuant to 28 U.S.C. §§ 2254 or 2255, and where

23  the practice in habeas proceedings has previously conformed to

24  the practice in civil actions.  Habeas Rule 12;[1] Fed. R. Civ. P.

25  81(a)(4).  The Advisory Committee's Notes caution that the civil

26  rules apply only when it would be appropriate and would not be

27

28      [1] The Rules Governing Section 2254 Cases may be applied to petitions brought pursuant to § 2241.  Habeas Rule 1(b).

4

inconsistent or inequitable in the overall framework of habeas corpus.  Habeas Rule 12 advisory committee's note; <u>Mayle v. Felix</u>, 545 U.S. 644, 654-655 n. 4 (2005).

The Supreme Court has characterized as erroneous the view that a Rule 12(b)(6) motion is appropriate in a habeas corpus proceeding.  <u>See</u>, <u>Browder v. Director, Ill. Dept. of Corrections</u>, 434 U.S. 257, 269 n. 14 (1978).  However, in light of the broad language of Rule 4, it has been held in this circuit that motions to dismiss are appropriate in cases that proceed pursuant to 28 U.S.C. § 2254 and present issues of failure to exhaust state remedies, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990 (a motion to dismiss for failure to raise any issue of federal law, which was based on the insufficiency of the facts as alleged in the petition to justify relief as a matter of law, was evaluated under Rule 4); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (procedural default in state court); <u>Hillery v. Pulley</u>, 533 F.Supp. 1189, 1194 n. 12 (E.D.Cal. 1982) (a motion to dismiss for failure to exhaust state remedies is appropriately considered after receipt of evidence pursuant to Rule 7(a) to clarify whether or not the possible defect, not apparent on the face of the petition, might preclude a hearing on the merits, and after the trial court has determined that summary dismissal is inappropriate).

In the present case, the Court has already undertaken to screen the petition pursuant to Habeas Rule 4, which requires the Court to dismiss a petition if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court.  The Court necessarily

had to screen the petition before it issued its order of January
15, 2010, directing Respondent to file a response to the
petition.  Thus, proceeding pursuant to Rule 12(b)(6) would be
repetitive and unnecessary.

In response to the motion, Petitioner argues that the
allegations of the petition are sufficient to state a claim, and
he cites to cases involving civil rights claims under § 1983.
(Opp. 3-4.)  He does not dispute the evidence or record of the
proceedings provided by Respondent in support of the motion
except that contrary to the BOP's position, it was a
misrepresentation of evidence that he was found with the cell
phone in his possession.  (Pet. 7, Opp. 6.)  He also states that
no evidence demonstrated that he possessed a cellular telephone.
(Opp. 6-7.)  However, in seeking to dispel any negative inference
that he possessed a weapon, Petitioner also states in his
opposition that he "established at the time of the hearing and
the evidence adduced in the Incident Report" that "he utilized a
cellular telephone in violation of TCI prison rules and
regulations."  (Opp. 3.)

In a manner inconsistent with a motion pursuant to Rule
12(b)(6), Respondent sets forth in the moving papers facts for
the Court to consider in determining the motion, and Respondent
submits exhibits in support of the factual assertions made in the
motion consisting of a record of the disciplinary proceedings in
question.  (Mot. 3-4.)  Respondent submitted matters extraneous
to the evidence presented at the hearing, such as notices given
to Petitioner in connection with the alleged violation (mot. ex.
B), contractual documents concerning the hearing officer who

6

1   Petitioner argues lacked the authority to hear and determine the

2   violation (mot. ex. F), and a certificate from the United States

3   Department of Justice, Federal Bureau of Prisons, to the effect

4   that the hearing officer had completed "DHO (Contract) Training"

5   (mot. ex. G).  Respondent proceeds to argue the facts as the

6   basis for a ruling on the motion.  (Mot. 6-9.)

7       The Court therefore concludes that Respondent is actually

8   arguing the merits of the petition.  The factual matter set forth

9   in support of the motion to dismiss actually serves as an answer

10  in this proceeding.  Review of the all the papers reveals that

11  Petitioner does not dispute the facts except that he asserts that

12  there was no evidence that a cell phone was found in his

13  possession; however, it appears that he has inconsistently

14  admitted using a cell phone in violation of the rules.

15  Petitioner's overarching argument, however, is that the evidence

16  of his having engaged in some apparently unauthorized use of a

17  telephone in prison was insufficient to constitute a violation of

18  Prohibited Act Code (PAC) § 108, which defines the prohibited act

19  of possessing, manufacturing, or introducing a hazardous tool to

20  further a criminal activity, because a telephone is not a tool or

21  weapon; further, there was no evidence that using the phone was

22  for a criminal activity pursuant to Program Statement 5270.07.

23  (Pet. 3-6, Opp. 3-6.)

24      A court has inherent power to control its docket and the

25  disposition of its cases with economy of time and effort for both

26  the court and the parties.  Landis v. North American Co., 299

27  U.S. 248, 254-255 (1936); Ferdik v. Bonzelet, 963 F.2d 1258, 1260

28  (9th Cir. 1992).  Given the positions of the parties, the Court

7

concludes that it would be wasteful of the resources of the
parties and the Court simply to consider the motion to dismiss on
narrow, strictly procedural grounds and then require Respondent
to file an answer.  It does not appear that any additional
factual matter would be pertinent to the claims before the Court
or that the parties desire to bring any further facts before the
Court.  Respondent's position is essentially that on the basis of
all the evidence in the record, Petitioner received all the
process that was due; Petitioner's position is that on the basis
of all the evidence in the record, Petitioner's right to due
process was violated by an absence of evidence to support the
disciplinary finding, and the hearing officer lacked the
authority to determine the violation.  It does not appear that
Petitioner will suffer any prejudice if the Court proceeds to
determine the merits of the petition.  Petitioner had a full
opportunity to support his contentions in the petition and to
argue the legal points in his opposition to the motion to
dismiss.  There does not appear to be any material dispute as to
the pertinent facts; rather, the parties disagree on the legal
significance of the facts.

Historically, only two types of dispositions were available
for habeas petitions: either summary dismissal, or a decision
after a full hearing.  Hillery v. Pulley, 533 F.Supp. 1189, 1196
(D.C.Cal. 1982).  However, Habeas Rule 7 permits expansion of the
record by the submitting additional materials relevant to the
merits of the petition, including documentary exhibits and
evidentiary documents such as sworn answers to interrogatories

and affidavits.  Habeas Rule 7(a), (b).[2]  One purpose of
expanding the record is to enable a judge to dispose of some
habeas petitions that are not dismissed on the pleadings, but to
do so without the time and expense required for an evidentiary
hearing. Habeas Rule 7 advisory committee's note.

In this case, the Court's order directing the filing of a
response resulted in the expansion of the record which, in view
of the absence of a material issue of fact concerning the
authenticity or contents of that record, permits consideration of
the merits of the petition without delay.

Accordingly, the Court DEEMS the motion to dismiss to be an
answer that responds to the petition.  The Court will consider
Petitioner's opposition as well as the petition.

The Court will proceed to determine the merits of the
petition.  It does not appear that any prejudice would result to
Petitioner from proceeding to the merits.

II. <u>Factual Summary</u>

According to the incident report of employee K. Sy, which
was dated and delivered to Petitioner on May 5, 2009, Officer M.
Maness found a silver "Pantech" Cingular cell phone on another
inmate, Jose Hernandez, on April 29, 2009.  (Mot. Ex. A 2.)  The
telephone displayed a specified telephone number in its message
inbox which investigation of the inmate telephone system (ITS) at
TCI revealed was on Petitioner's telephone list.

---

[2] The party against whom the additional materials are offered must have
an opportunity to admit or deny their correctness.  Habeas Rule 7(c).  All
materials to be included in the record must be submitted to the party against
whom they are to be offered.  Habeas Rule 7 advisory committee's note.

Sergeant J. Ford investigated the incident.  He noted that in an interview, Petitioner admitted using the cell phone several times.  (Id. at 3.)  During the investigation Petitioner stated that he used the cell phone only to call his wife, and he had put $25.00 on the telephone out of appreciation.  (Id. at 3.) Attached to the report were photographs of the telephone and Petitioner's approved call list and telephone list.  (Id.)  Sy had determined that Petitioner had used a cellular telephone in violation of TCI rules and regulations.  (Id. at 2.)  On May 5, 2009, Sergeant Ford concluded that the incident report was correctly written, and he forwarded it to the unit discipline committee (UDC) for further action.  (Id. at 3.)

The portion of the report concerning committee action reflected that Petitioner commented to the committee that the telephone was not his, and he only used it a couple of times. (Mot. Ex. A 2.)  On May 7, 2009, the case was referred to the disciplinary hearing officer (DHO), and it was recommended that Petitioner lose good conduct time and receive disciplinary segregation.  (Id.)

On May 7, 2010, Petitioner received notice of his rights to written notice of the charges twenty-four hours before appearing before the DHO; a full-time staff member to represent him before the DHO; call witnesses or present written statements of unavailable witnesses and documentary evidence provided institutional safety would not jeopardized; present a statement or remain silent; be present during the hearing except during deliberation or when institutional safety would be jeopardized; advice of the DHO's decision, the facts supporting the decision

except where institutional safety would be jeopardized, and the
DHO's disposition in writing; and appeal the decision to the
regional director after notice of the decision.  (Mot. Ex. B at
8.)  Petitioner was advised that the alleged violation was
possession, manufacture, or introduction of a hazardous tool
(cell phone) on April 29, 2009.  (Id. at 9.)  He did not desire a
representative or witnesses.  (Id. at 9.)

At the hearing held on May 12, 2009, Petitioner chose to
remain silent; no witnesses were called, and the DHO considered
the incident report and investigation, the photographic evidence,
unspecified confidential information, and the approved telephone
list for Petitioner.  (Mot. ex. C 11-12.)  The report of the DHO
shows that he found that Petitioner had committed the act as
charged in violation of PAC § 108 based on Sy's report indicating
the discovery of the cellular telephone in the possession of
another inmate, the recorded inbox message with a telephone
number that was on Petitioner's telephone list, Petitioner's
admission to using the phone several times, the photo of the
recovered telephone and the approved telephone list, and an
adverse inference drawn from Petitioner's silence and the absence
of any evidence disputing the charges.  (Id. at 12.)  The DHO
concluded that the "greater weight of the evidence" supported the
finding that Petitioner committed the prohibited act, and he
sanctioned Petitioner with the loss of twenty (20) days of good
conduct time and six (6) months of telephone use.  (Id.)  The
reason for the action was stated by DHO Logan on May 20, 2009, as
follows:

These sanctions are imposed in order to stress the

11

1  seriousness of your actions and to punish you.  A
   cell phone can be used to arrange an escape or an
2  escape attempt and it can be connected to the threat
   that illicit drugs pose to institutional security due
3  to the inability to monitor phone calls.  These pose
   a serious threat to the security of the institution.
4  The sanctions imposed are to cause you to refrain from
   committing this, or any other prohibited act in the
5  future.  It should be noted that the amount of good
   conduct time was reduced due to your cooperation with
6  the investigation.

7  (Id.)  The findings were delivered to Petitioner on May 29, 2009.

8  (Id.)

9      Petitioner appealed the findings, arguing that there was no

10  evidence that his acts of using a cellular phone furthered a

11  criminal activity, his sanction was excessive, and the DHO

12  ignored unambiguous program statements, including BOP PS §

13  5270.07, to the contrary.  (Mot. ex. D 15.)  The regional

14  administrative remedy appeal response from James E. Bunnell,

15  Administrator of the Privatization Management Branch, dated June

16  25, 2009, was that the proceedings had substantially complied

17  with Program Statement 5270.07, <u>Inmate Discipline and Special</u>

18  <u>Housing Units</u>, because Petitioner had received notice of his

19  rights and was allowed to make a statement, Petitioner had

20  remained silent, and the DHO also had considered the reporting

21  officer's written statement.  (<u>Id.</u> at 16.)  It was stated that

22  Petitioner admitted to using the cell phone several times and

23  that he was found with the cell phone in his possession.  (<u>Id.</u> at

24  16.)  Further, due process was satisfied because he received

25  written notice of the charges, a copy of the incident report, and

26  a hearing a week later.  (<u>Id.</u>)

27      Petitioner appealed to the central office, noting the

28  absence of evidence that he had been found in possession of the

telephone and arguing that there was no evidence of connection to a criminal activity. (Mot. ex. E at 18.)  On November 3, 2009, Harrell Watts, Administrator of National Inmate Appeals, denied the appeal because Petitioner received procedural due process, he did not provide evidence of any due process violation, and the DHO's decision was based on the greater weight of the evidence, including finding a cell phone on Petitioner's person and a telephone number in it from his approved telephone list, and Petitioner's admission to using the cell phone. (Id. at 20.)

III. <u>Legal Standards</u>

Title 28 U.S.C. § 2241 provides that writs of habeas corpus may be granted by a district court within its jurisdiction only to a prisoner whose custody is within enumerated categories, including but not limited to custody under the authority of the United States and custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241(a), (c)(1), (3).

Procedural due process of law requires that where the state has made good time subject to forfeiture only for serious misbehavior, then prisoners subject to a loss of good-time credits must be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact as to the evidence relied upon and the reasons for disciplinary action taken.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-64 (1974).  Confrontation, cross-examination, and counsel are not required.  <u>Wolff</u>, 418 U.S. at 568-70.

Further, where good-time credits are a protected liberty interest, the decision to revoke credits must be supported by some evidence in the record.  Superintendent v. Hill, 472 U.S. 445, 454 (1985).  The Court in Hill stated:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134, 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (CA8 1974).

Superintendent v. Hill, 472 U.S. at 455-56.  The Constitution does not require that the evidence logically preclude any conclusion other than the conclusion reached by the disciplinary board; rather, there need only be some evidence in order to ensure that there was some basis in fact for the decision. Superintendent v. Hill, 472 U.S. at 457.

IV. Analysis

Preliminarily, the Court notes that although Petitioner does not claim that the procedures followed were constitutionally flawed, the Court notes the adequacy and timeliness of the notice given to Petitioner, the sufficiency of the opportunity to testify or present evidence, and the adequacy of the statement of the pertinent findings and evidence.

A. Some Evidence to Support the Disciplinary Finding

14

At all times pertinent to the petition, 28 C.F.R. § 541.13 has provided that prohibited acts of the greatest severity include a violation of Prohibited Act Code § 108, which is described as follows:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade).

28 C.F.R. § 541.13, tab. 3.

Here, the record contains some evidence supporting the disciplinary findings, including Petitioner's multiple admissions that he had used the cell phone to make calls, the fact that the cell phone's inbox message system contained a telephone number that was on Petitioner's approved call number list, Petitioner's admission that he had contributed money for use of the phone, and the photographs of the telephone and related evidence.

Petitioner argues that there was no evidence of his possession of the telephone, but only of his having used the telephone. Petitioner cites Wallace v. Nash, 311 F.3d 140, 145 (2nd Cir. 2002), which involved a violation of PAC § 104, possession of a weapon. There, the code required possession of a weapon, including a "gun, firearm, weapon, sharpened instrument, knife, dangerous chemical, explosive, or any ammunition." The court concluded by traditional processes of construction that the word "weapon" did not include a pool cue. 311 F.3d at 143-44.

The court in Wallace also concluded that "possession" of the weapon did not encompass "use," and the two were not interchangeable. The court reasoned that in view of the separate

1 sections making each act a violation, and because of the

2 limitations on the items that could be considered weapons in the

3 possession provision, possession of an article that could be used

4 as a weapon was not tantamount to possession of a weapon.

5     Here, the item with respect to which possession was

6 prohibited was the telephone itself, not any other thing being

7 used as a telephone.  Because it was the identity of the

8 telephone itself as a tool for escape that made the offense as

9 serious as it was, there was little to differentiate use of a

10 phone on the one hand, and possession on the other, with respect

11 to the perceived social harm of danger to institutional security.

12 It is a reasonable inference from the evidence of Petitioner's

13 admission of having used the telephone that he controlled or

14 possessed the telephone at the time he used it.  The fact that

15 Petitioner admitted having paid to use the telephone strengthens

16 the inference that Petitioner had control over the instrument.

17 The Court concludes that because of the different code provision

18 and evidence in the present case, this case is not analogous to

19 Wallace v. Nash.

20     Petitioner also cites to Gamble v. Calbone, 375 F.3d 1021

21 (10th Cir. 2004), in which it was found that an intention to

22 obtain fees for records and transcripts was reasonable, negated

23 an intention to defraud or cheat, and did not constitute some

24 evidence of an intent to defraud.  Again, neither the code

25 violation involved in Gamble nor the facts are similar to the

26 situation presented by the present case, in which no specific

27 intent was required for responsibility for the prohibited acts.

28     The Court is mindful that the decisions of administrators

Bunnell and Watts contained erroneous references to Petitioner's having been found with the cell phone in his possession. (Mot. ex. D 16-20.) The evidence was that the cell phone was found in another inmate's possession; thus, the administrators could not validly have relied on evidence that Petitioner was found in possession of the cell phone. However, this mistake concerning the evidence did not infect the initial finding.

Further, it did not change the result of the analysis at the later stages of the disciplinary proceedings. Even if no one ever observed Petitioner personally possessing the telephone, the record nevertheless contains some independent evidence, which was relied on by the administrators during the appeal, to support the finding, namely, the photographic evidence of the telephone equipment and numbers, Petitioner's repeated admissions that he had used the telephone more than once, and the fact that the telephone contained a number from Petitioner's approved call list. It is not necessary that a prisoner be the sole person with access to a telephone in order for responsibility for the code violation to be established. See, Flannagan v. Tamez, 2009 WL 649572, *2-3 (N. D. Tex. March 12, 2009) (finding that sufficient evidence of constructive possession was present to support a finding of violating § 108 by possessing a cellular telephone where the inmate had knowing ownership, dominion, or control over the contraband or over the premises in which the contraband was located), aff'd., Flannagan v. Tamez, 2010 WL 759159 (5th Cir. March 5, 2010); Ford v. Fondren, 2009 WL 943851, *5 (D. Minn. April 6, 2009) (holding that a violation of § 108 by possessing a telephone was sufficiently supported by some

1  evidence where the telephone was located at the inmate's work
2  site, the inmate attempted to destroy the telephone, and the
3  inmate admitted that he picked up the telephone and was in the
4  area of the telephone).

5      Considering the entirety of the evidence and the findings in
6  question, the Court concludes that Petitioner has not
7  demonstrated that he was prejudiced by the erroneous statement
8  concerning the telephone having been found in his possession.
9  Further, the record of the disciplinary hearing contained some
10 evidence to support the finding of possession of the telephone
11 that was independent of the erroneous statement that Petitioner
12 had been observed in possession of the telephone, and that was
13 relied upon not only by the hearing officer but also by the staff
14 participating in the administrative review process.

15     Petitioner argues that the evidence was insufficient because
16 there was no evidence connecting his use of the telephone to
17 criminal activity or to the promotion of an escape.  However, the
18 prohibited act which Petitioner was charged with having committed
19 did not expressly require that the possession of the tool be
20 connected to criminal activity; rather, it required only the
21 conduct of possession, manufacture, or introduction of a
22 hazardous tool.  Further, of the types of hazardous tools
23 specified, one category was tools "most likely to be used in an
24 escape or escape attempt."  28 C.F.R. § 541.13, tab. 3, § 108.
25 As an instrument of communication, the telephone necessarily
26 constitutes a hazardous tool with respect to the security of the
27 institution.

28     The Court notes that there is a separate section in the

18

listing of violations of the greatest severity that expressly proscribes the "[u]se of the telephone to further criminal activity."  28 C.F.R. § 541.13, tab. 3, § 197.  Further, in the less serious categories, there are additional sections proscribing the use of the telephone for abuses other than criminal activity.  See, § 297 (giving examples of the possible abuses other than criminal activity, such as circumventing telephone monitoring procedures and possession and/or use of another inmate's PIN number, third-party calling and billing, conference calling, talking in code, and using credit card numbers to place telephone calls); § 397 (listing the use of the telephone for abuses other than criminal activity, such as conference calling, possession and/or use of another inmates' PIN number, three-way calling, and providing false information for preparation of a telephone list).  Id.  Section 497 in the low moderate category proscribes use of the telephone for other abuses besides criminal activity, such as exceeding the fifteen-minute time limit for telephone calls, using the telephone in an unauthorized area, and placing an unauthorized individual on the telephone list.

It thus appears that institutional staff had several options with respect to selection of a charge, and that the offense with which Petitioner was charged did not expressly require that the telephone be used to further criminal activity.  Therefore, the absence of a finding of use to further criminal activity and of evidence sufficient to demonstrate such use did not violate Petitioner's rights because the code violation with which Petitioner was charged did not require such evidence.

Petitioner points to a Change Notice from October 11, 2000, regarding updating the Bureau of Prison's Program Statement 5270.07, concerning inmate discipline and special housing units, in which the following was stated:

> 2. **SUMMARY OF CHANGES.**  This Change Notice directs the creation of a Greatest Severity Level prohibited act (100 level offense code) for use of the telephone to further any criminal activity, the creation of a High Severity Level prohibited act (200 level offense code) for non-criminal telephone abuses, the creation of a Moderate Severity Level prohibited act (300 level offense code) for non-criminal telephone abuses, and the creation of a Low Moderate prohibited act (400 level offense code) for non-criminal telephone abuses.

Further, the change notice established the new prohibited acts offense codes of 197, 297, 397, and 497.  Id.

Petitioner argues that based on this program statement, the prison staff lacked the discretion to impose punishment for an act of the greatest severity level absent a finding of furtherance of any criminal activity.

However, a program statement is an internal agency guideline that is not subject to the requirements of the APA such as public notice and comment.  Reno v. Koray, 515 U.S. 50, 61 (1995).  It is established in this circuit that the Administrative Procedure Act (APA) does not apply to prison discipline proceedings.  Clardy v. Levi, 545 F.2d 1241, 1246 (9th Cir. 1976).  Thus, program statements, policy statements, agency manuals, or enforcement guidelines lack the force of law and do not warrant Chevron-style deference.  Christensen v. Harris County, 529 U.S. 576, 587 (2000).  Such statements may be considered persuasive authority, but they do not impose judicially enforceable duties.  Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005

20

(9th Cir. 2006); <u>Lowry v. Barnhart</u>, 329 F.3d 1019, 1023 (9th Cir. 2003).

The language in the program statement pertinent to this case thus does not provide a basis for habeas relief.

Further, it is clear that the administrators of the prison considered the conduct of the Petitioner in this case to have been extremely serious because of the threat to institutional security inherent in Petitioner's possession of the telephone. As the DHO stated, a cell phone can be used to arrange an escape or escape attempt or to bring illicit drugs into the institution. This reality was appropriately considered by the administrators of the prison, where the discipline process is not analogous to criminal charges:

> The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. <u>E.g.</u>, <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. 418 U.S., at 561, 94 S.Ct., at 2977. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." <u>Ibid.</u> Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. <u>See</u>, <u>e.g.</u>, <u>Ponte v. Real</u>, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985); <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321-322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976); <u>Wolff v. McDonnell</u>, supra, 418 U.S., at 562-563, 94 S.Ct., at 2977-2978.

<u>Superintendent v. Hill</u>, 472 U.S. 454-55.  Here, the determination

1   was based on some evidence, and the prison administrator

2   articulated a legitimate, institutional interest in security in

3   determining the appropriate sanction for Petitioner's conduct of

4   possessing a cellular telephone.  Petitioner has not established

5   that he was deprived of due process of law or that the prison

6   officials' disciplinary findings were arbitrary or unsupported.

7                B. <u>Authority of the Hearing Officer</u>

8       Petitioner argues that the disciplinary hearing officer, DHO

9   C. Logan (mot. ex. C 13), was not an employee of the BOP, and

10  thus he was not authorized to impose disciplinary sanctions.

11  Petitioner asserts that TCI is operated by a private corporation,

12  Management Training Corporation (MTC), and that TCI merely has a

13  contract with the BOP to house federal inmates.  Petitioner

14  relies on 28 C.F.R. § 500.1(b), which contains definitions

15  pertinent to the BOP and Department of Justice (DOJ), and which

16  defines "Staff" as any employee of the Bureau of Prisons or

17  Federal Prison Industries, Inc.  28 C.F.R. § 500.1(b).

18      The Court has reviewed the regulations and concludes that

19  they do not exclude delegation of the authority to discipline to

20  contractor employees.  Regulations define the purpose and scope

21  of inmate discipline and special housing units.  The regulations

22  apply to inmates whose behavior is not in compliance with BOP

23  rules, and to "all persons committed to the care, custody, and

24  control (direct or constructive) of the Bureau of Prisons."  28

25  C.F.R. § 541.10(a).  Only "institution staff" may take

26  disciplinary action within Bureau rules and institution

27  guidelines.  28 C.F.R. § 541.10(b)(1), (2).  However, regulations

28  require the warden to delegate to institution staff members the

                                22

authority to hold the initial hearing.  28 C.F.R. § 541.15.  A
discipline hearing officer (DHO) is defined by regulation as a
one-person, independent, discipline hearing officer who is
responsible for conducting institution discipline hearings and
who imposes appropriate sanctions for incidents of inmate
misconduct referred for disposition following the hearing before
the unit discipline committee (UDC).  28 C.F.R. § 541.2.  Each
BOP institution shall have an independent DHO who must be trained
and certified as a DHO and meet the other requirements.  28
C.F.R. § 541.16. The inmate may appeal a DHO's decision to the
regional director for the region where the inmate is currently
located.  28 U.S.C. § 542(d)(2).

The pertinent statutory framework is also consistent with
the delegation of authority to institution staff.  Title 18
U.S.C. § 4001(b)(2) provides that the Attorney General may
establish and conduct industries, farms, and other activities,
classify the inmates, and provide for their proper government,
discipline, treatment, care, rehabilitation, and reformation.
Title 18 U.S.C. § 4041 provides that the Attorney General may
appoint not only a director who is in charge of the BOP and who
serves directly under the Attorney General, but also such
additional officers and employees as the Attorney General deems
necessary.  Title 18 U.S.C. § 4042(a)(3) provides in pertinent
part that the BOP shall have charge of the management and
regulation of all federal penal and correctional institutions and
provide for the discipline of all persons convicted of offenses
against the United States.

From these broad, statutory grants of authority to the

Attorney General, it is clear that the Attorney General has been given by Congress the authority to appoint a director of the BOP and to delegate authority to discipline inmates to additional officers and employees.  That this authority has been delegated to DHO Logan is shown by the statement of work contract submitted by Respondent as pertaining to Logan's employment.  (Mot., ex. F.)  Petitioner does not dispute the authenticity of this document.  The provisions constitute the contract performance requirements for the "management and operation of the government owned-contractor-operated correctional institution in Taft, California."  (Mot. ex. F 3.)  The contractor is required to ensure that the facility is operated consistently with the BOP's mission and in compliance with the contract, the Constitution, and all applicable law and regulations.  (Id. at 4, 10.)  The BOP reserves the right to have staff on site to monitor contract performance.  (Id. at 10.)  Employment suitability is determined by using the BOP's guidelines and is subject to the approval of the BOP; authority to approve all contractor staff who work with inmates, to investigate alleged misconduct, and to withdraw final employment approval authority for any employee pursuant to specified standards, is retained by the BOP.  (Id. at 15-16, 21.) All credentials are required to be kept current and maintained for the duration of the person's contract performance.  (Id. at 18.)

The agreement expressly provides for a contractor employee to be a DHO.  The contract describes a DHO as a "government trained and certified contractor employee responsible for conducting disciplinary hearings."  (Id. at 6.)  It requires the

government to "provide specialized training to assist the contractor in performing some specialized requirements," including discipline training for twenty-four (24) hours and DHO training for twenty-four (24) hours, which is "mandatory as described in Section J of the contract."  (Id. at 22.) Respondent has also submitted what purports to be a certification from the United States Department of Justice, Federal Bureau of Prisons, Management and Speciality Training Center, Aurora, Colorado, of Curtis Logan's DHO (Contract) Training dated July 1, 2004.  (Mot. ex. G.)  Petitioner does not dispute the authenticity of the document.

The Court concludes that the authority to perform the duties of a DHO was delegated to contractor employee Logan.

Petitioner relies on 18 U.S.C. § 4013.  Section 4013(a) authorizes the Attorney General to make payments from funds appropriated for federal prisoner detention for specified necessities of life for persons held in custody of a United States marshal pursuant to federal law under agreements with state or local units of government or contracts with private entities.  Section 4013(c) provides requirements for private entities and procedures to be followed to effectuate the designation of districts that need additional support from private detention entities.  Although the provision refers to "non-Federal" institutions, the section does not prohibit delegation of BOP functions, let alone delegation to staff at institutions like Tehachapi that are owned by the government and run by a private entity subject to extensive oversight by the BOP.  (Mot. ex. F 3.)

1    Petitioner relies on <u>United States v. Cardona</u>, 266 F.Supp.2d

2    558, 559-62 (W.D.Tex. 2003), in which it was held that for

3    purposes of federal criminal charges of possession of a

4    prohibited object as an inmate in a federal prison and attempting

5    to provide it to a fellow inmate in violation of 18 U.S.C. §

6    1791(a)(1) and (2), an inmate of a correctional facility that was

7    privately owned by a corporation that subcontracted the facility

8    to a county, which in turn contracted with the United States to

9    house federal inmates along with local prisoners, was not an

10   inmate of a federal prison because the facility was not a federal

11   correctional, detention, or penal facility within the meaning of

12   18 U.S.C. § 1791(d)(4).  The court reasoned that the mere

13   presence of federal prisoners did not make the facility federal

14   where control over the daily operations and management of the

15   institution and the custody and care of federal prisoners was not

16   in the Attorney General as set forth in 18 U.S.C. § 4001(b)(1).

17   The court employed traditional rules of statutory construction

18   and sought to avoid unconstitutional vagueness.  Petitioner

19   similarly relies on <u>United States v. Rios-Flores</u>, 318 F.Supp.2d

20   452 (W.D.Tex. 2003), holding that the same institution was not a

21   federal prison within the scope of 18 U.S.C. § 1791(d)(4).

22       The pertinent circumstances of the institution in the

23   present case differ from that involved in <u>Cardona</u> and <u>Rios-</u>

24   <u>Flores</u>.  Here, the institution is federally owned, and the

25   government retains key elements of control over the employees and

26   the daily operations of the institution pursuant to the

27   contractual provisions submitted to the Court.  Further, it is

28   noted that the court in <u>Rios-Flores</u> expressly declined to take a

position on whether a privately run prison that contracted

directly with the United States would be considered a federal

penal facility.   318 F.Supp.2d at 453 n. 3.

In summary, the Court concludes that the authority to

discipline inmates at TCI was delegated to DHO Logan.

V. <u>Recommendation</u>

The Court concludes that Petitioner has not demonstrated

that the disciplinary proceedings and findings were unauthorized

under federal law or violated his right to due process of law.

Petitioner has not shown that he is entitled to relief pursuant

to § 2241.

Accordingly, it is RECOMMENDED that the petition for writ of

habeas corpus be DENIED.

These findings and recommendations are submitted to the

United States District Court Judge assigned to the case, pursuant

to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of

the Local Rules of Practice for the United States District Court,

Eastern District of California.  Within thirty (30) days after

being served with a copy, any party may file written objections

with the Court and serve a copy on all parties. Such a document

should be captioned "Objections to Magistrate Judge's Findings

and Recommendations."  Replies to the objections shall be served

and filed within fourteen (14) days (plus three days if served by

mail) after service of the objections.  The Court will then

review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

(b)(1)(C).  The parties are advised that failure to file

objections within the specified time may waive the right to

/////

appeal the District Court's order.   <u>Martinez v. Ylst</u>, 951 F.2d
1153 (9th Cir. 1991).


IT IS SO ORDERED.

**Dated:    June 7, 2010**                    _____/s/ Sandra M. Snyder_____
                                             UNITED STATES MAGISTRATE JUDGE